Daniels, J.
—William Agate was the owner of premises known as 306 Bleecker street, in the city of New York. These premises were incumbered by mortgages, and he was also indebted to John Agate, his father. These mortgages were purchased by John Agate, and assignments of them were made to him. He foreclosed them, and by his son Joseph Agate acting for him, bid in the property, which was conveyed to him by the sheriff in the early part of the year 1853.
The title remained in this condition until the decease of John Agate, which took place in 1855. He left five children, his heirs-at law, him sui’viving, and three of them in the early part of the year 1857 joined in a deed of these premises to the defendant, who has since that time continued to hold the title conveyed by the deed. William Agate, the father of the plaintiff, and one of the heirs-at law of John Agate, resided at that time in the state of California, and did not join in the deed to the defendant. He died in January/ 1887, leaving the plaintiff, his only heir-at-law, him surviving. And he commenced this action in November, 1887, to redeem the property from the foreclosure sale, alleging for that purpose an agreement to have been made between William and John Agate, that the latter should, obtain assignments of the two mortgages and foreclose them and secure the title to the property, and hold it for the money to be advanced by him, as well as security for the other indebtedness owing from William to John Agate, his father, until he should be paid by William.
The case was before the general term on two occasions preceding the last trial, and on the second occasion on issue of fact embodying these allegations, was directed to be framed and tried by a jury. The issue was framed in the manner directed by the general term and it came to trial before a jury, who answered it in favor of the plaintiff. Upon this trial evidence was given tending to establish the fact of the making of such an agreement. It was obtained mostly from the evidence of Joseph Agate, one of the sons of John Agate, which was read upon the last trial as it had previously been taken, he having died in the meantime. His evidence was very direct in its tendency to support the existence of the alleged agreement. And while he was in material respects contradicted in his statements, he was not so far impeached as to deprive the jury of the right to consider and act upon his testimony, especially as it was corroborated by that of his son, and by the circumstance that the defendant permitted the rents and profits of the property to be appropriated to the use and benefit of William Agate, after she received the deed executed and delivered to her, and up to the period of his decease. Her testimony is *581 that this was under a misapprehension on her part as to the nature of her father’s will, and from the assurance received by her from her brother, Joseph Agate, that while she was to own the title to the Bleecker street property, the rents and profits were to go to her brother William Agate. This evidence has twice been considered by the general term, and it has been held to be sufficient to sustain a decision maintaining the existence of this alleged agreement. And assuming it to be sufficient as the jury found the existence of the agreement, and their finding has been sanctioned and acted upon at the trial before the special term, that will authorize the plaintiff to maintain this action. Horn v. Keteltas, 46 N. Y., 605; Carr v. Carr, 52 id., 251; Ryan v. Dox, 34 id., 307.
It is true that exceptions to the principle enunciated by these authorities are made upon slight distinctions, but no such difference seems to exist between this and the cases referred to, especially the latter, as would render the application of this principle improper. It has been urged that the case of Wheeler v. Reynolds (66 N. Y., 227), excludes this case from the application of the rule already referred to, but this authority was not considered to be attended with that effect when this case was before the general term in March, 1881. But, on the contrary, it was held to be controlled by the other authorities. And at this time it may be considered as a settled proposition, in this general term, that the evidence was sufficient for the consideration, of the jury. And, as it proved to their satisfaction and the satisfaction of the special term, that the agreement was made and acted upon as it has been alleged, these facts are now to be accepted as established in the litigation.
On the final trial before the special term the plaintiff undertook to establish the further equally essential fact that the indebtedness of William Agate to John Agate had been paid. This indebtedness, including the amounts paid for the mortgages and the excess above that amount which was bid at the purchase on the foreclosure sale, amounted to the sum of $4,200. And the other indebtedness held by John Agate in the form of notes and otherwise against William Agate, brought the amount up to the sum, as it was stated by Joseph Agate, of $10,141.50. Six thousand dollars of that amount was stated, on the final trial, to have been paid to the defendant as the share of William Agate in the estate of John Agate, and a mortgage was made by the defendant upon the property for the sum of $3,000, upon which that amount of money was obtained for the benefit of the estate and paid out of the rents of this property, and that a small residue still remaining was also paid from the rents of the real estate. And upon that *582 proof it appears to have been found by the court, that the estate of John Agate had been reimbursed for the indebtedness created by the purchase of the mortgages and the conveyance of the property on the foreclosure sale, and also for the additional indebtedness owed by William Agate; and that the plaintiff consequently was entitled to a re-conveyance of this property, together with an accounting for its rents and profits after the time when .this adjustment is stated to have taken place, as the fact is alleged to have been in the year 1857. But how the payment of this sum of $6,000 to the defendant could operate either wholly or partially osa payment of the indebtedness of William Agate to the estate does not appear from the evidence.
That he paid anything directly, or through the agency of any other person, from his own funds, other than the $3,000 and the small balance finally paid by the rents of the premises, has not been proven in the action. What was paid, was paid by the rents, and this sum of $6,000, no part of which issued from such rents, but it is stated to have been the share of William in the estate substracted from his indebtedness. But the fact is that William had no share whatever in his father’s estate. By the will, as it was made, the testator did direct all the rest and residue of his estate, real and personal, to be divided, share and share alike, between his five children. But this was followed by a codicil, afterwards executed by him, in which he gave and bequeathed unto his daughter Ann Eliza all the portion or bequest which was in and by his will given and bequeathed to his son William Agate, except the sum of ten dollars. And it is clear from this codicil that all the interest William had in his father’s estate was this sum of ten dollars, and that the defendant was entitled to one share in the estate under the will, and to another share under the codicil. And the payment of this sum of $6,000 to her was in no manner a payment of that amount on the indebtedness of William Agate to his father’s estate. He appears by the proceedings before the surrogate to have been indebted to the estate in the sum of $9,829.56, upon which it is stated that the executors had realized nothing beyond the fact that the deed represented the house held by the deceased and deeded to the defendant. And it certainly does not appear by the inventories that the defendant had been paid more than she was entitled to under the will and codicil of the testator, even assuming that the receipt given by the defendant contained a correct statement of the consideration of the deed to her, that it was for one share of the estate of the testator. According to the papers produced, she received no more than she was entitled to under the will and the codicil, and what she obtained *583 was obtained by her from the estate of her father, and not from William Agate or the plaintiff in the action. There accordingly appears to be no ground upon which the payment to her of this sum of $6,000 can be legally applied upon the indebtedness of William Agate to the estate, or to herself as the grantee of this property. Upon this part of the case there was a striking failure of evidence.
But under the view adopted by the special term, it was entirely proper practice to refer the case to a referee to take proof of the rents and profits of the property, and to charge the defendant with such rents and profits during the time they had been received by her. Such an accounting took place, and she was found to be indebted by reason of such rents and profits over and above the expenses paid by her, in the sum of $12,468.14. And for that, together with interest, costs and allowance, judgment was directed against the defendant.
_ If does not appear that the referee erred in his computation, or that the court improperly confirmed this report. But out of this sum there certainly should have been directed to be deducted or allowed against the plaintiff, the balance still owing upon the indebtedness of William Agate to his father’s estate, exceeding that paid out of the rents. That was in no manner provided for, but the case was disposed of upon the theory that the indebtedness of William to the estate had been satisfied and extinguished, while the fact quite clearly appears to be otherwise.
For these reasons the- judgment following the trial at the special term should be reversed, and a new trial ordered, with costs to the defendant to abide the event, and the order denying the motion to set aside the verdict should be affirmed, with costs to the plaintiff.
Van Brunt, P. J., and Brady, J., concur.